PITMAN, J.
_JjC. Bean Transport, Inc. Creditors Trust appeals a judgment from the First Judicial District Court, of Louisiana, Caddo Parish, dismissing its petition to intervene seeking reimbursement and subrogation for workers’ compensation payments previously made to Plaintiffs, Claude B. Kennedy and his wife, Robbie J. Kennedy. For the following reasons, we affirm the trial court’s dismissal.

FACTS

On January 31, 2005, Plaintiff, Claude B. Kennedy (“Claude”), was driving an 18-wheeler owned by his employer, C. Bean Transport, Inc. (“Bean Transport”),[1] on Bert Kouns Industrial Loop in Shreveport, Louisiana, when he was rear-ended by Defendant, Mickey Joe Durden (“Durden”). Durden was uninsured. Claude was performing work duties for Bean Transport, an Arkansas company authorized to do business in Louisiana, at the time of the collision. Bean Transport owned the truck and the automobile liability insurance policy covering the truck Claude was driving. Bean Transport paid a portion of Claude’s workers’ compensation benefits as a result of the accident, but currently has a workers’ compensation judgment against it for failure to fulfill the rest of its obligation.
Plaintiffs filed suit to recover from Dur-den; Phoenix Insurance Co. (“Phoenix”), Plaintiffs’ personal automobile insurance carrier; and Bean Transport’s automobile liability insurance carrier, Cherokee Insurance |2Company (“Cherokee”). On February 15, 2008, Bean Transport filed a petition to intervene in the proceeding seeking to recover from Cherokee, as its uninsured/underinsured (UM) motorist coverage carrier, which is statutorily required in Louisiana, any and all workers’ compensation benefits it paid to Claude. Judge Scott J. Crichton granted Plaintiffs’ motion for summary judgment against Intervenor and granted Cherokee’s motion for partial summary judgment, dismissing Bean Transport’s petition to intervene. The district court reasoned that, because of the exclusions agreed upon in the Cherokee automobile liability insurance policy, the policy does not apply to any obligation for which Bean Transport might be liable under workers’ compensation law and Bean Transport does not have a legal basis to maintain claims in the lawsuit. Judge Crichton signed a judgment to that effect on July 10, 2009.
The Cherokee insurance policy at issue contains the following exclusion:
⅝ ⅜ ⅜ ⅜ ⅛ ⅜
C. Exclusions:
This insurance does NOT apply to any of the following:
⅜ * ⅝ * ⅝ i'fi
3. Workers’ Compensation:
*14 Any obligation for which the “insured” or the “insured’s insurer” may be held liable under any workers’ compensation, disability benefits or unemployment compensation or any similar law.
Bean Transport appealed the judgment to this court, but that appeal was dismissed. The third defendant named in the petition to intervene, |3Purden, did not file a motion for summary judgment; and, without express language making the judgment final against all defendants, Bean Transport’s claim against Durden was not dismissed. The judgment was not final and, thus, could not be reviewed on appeal.
On joint motion of Cherokee and Plaintiffs, Judge Crichton entered an amended judgment dismissing Bean Transport’s intervention against all Defendants based on the Cherokee insurance policy exclusion and expressly stating that it was a final, appealable judgment. Bean Transport now appeals, alleging that the judgment was amended ex parte and that the court erred in determining that the Cherokee insurance policy exclusion applied to its statutorily imposed UM obligation.
Assignment of Error # 1 (verbatim): The trial court erred in amending its July 10, 2009 judgment ex parte and without a hearing or notice to all parties.
Bean Transport contends that the trial court committed error in failing to give notice or allow a hearing before amending its July 10, 2009 judgment. La. C.C.P. art. 1915 allows a court to revise or amend an order or decision at any time prior to rendition of the judgment adjudicating all of the claims and the rights and liabilities of all the parties. In McDonald v. Cason, 01-0932 (La.App. 3d Cir.12/12/01), 801 So.2d 1255, writ denied, 02-0135 (La.3/22/02), 811 So.2d 938, the court interpreted La. C.C.P. art. 1915 as not requiring an evidentiary hearing before amending a judgment. Bean Transport asserts that, since the first ruling did not apply to Durden, as determined by this court, Durden and other parties should have [4been given an opportunity to be heard before a final judgment was submitted.
This case was remanded because the appealed judgment granted summary judgment against only two of the three defendants. On remand, the trial court, in its discretion, amended the judgment to include the third defendant, making the judgment final and appealable. La. C.C.P. art. 1915(A)(1) specifically states that a final judgment may be rendered and signed by the court to dismiss the suit as to intervenors. There are no statutory notice requirements and the court acted in its discretion to dismiss the intervention of Bean Transport against all parties. Accordingly, this assignment is without merit.
Assignment of Error # 2 (verbatim): The trial court committed error when it found that Cherokee Insurance Company’s automobile liability policy issued to C. Bean Transport, Inc. included a contractual exclusion that applied to its statutorily imposed uninsured motorist obligation.
The Cherokee policy contains a workers’ compensation exclusion, previously quoted herein. Bean Transport’s intervention seeks to recover from Cherokee as its UM carrier the sum of the workers’ compensation payments it made to Claude. Bean Transport argues that the district court erred in finding that the exclusions contained in the automobile liability policy issued by Cherokee also apply to UM coverage. Bean Transport further argues that, since La. R.S. 23:1101 allows an employer who pays workers’ compensation benefits to an employee to bring suit to recover from a third party who is obligated to pay the injured employee for damages, *15 it has the right to recover from Cherokee as a third-party UM carrier. Travelers Ins. Co. v. Joseph, 95-0200 (La.6/30/95), 656 So.2d 1000. [ ¡¡Further, Bean Transport asserts that Cherokee’s third-party status as its UM provider is separate from the contractual relationship that exists between it and Cherokee under the automobile liability policy and that the exclusion in the liability policy should not apply to the UM coverage.
Louisiana law requires all automobile liability insurance policies to provide UM coverage for any accident which occurs in Louisiana. La. R.S. 22:1295(1)(a)(iii). The insured under an automobile liability policy can specifically reject or alter the UM coverage within the limits of the statute. The rejection or alteration to the statutory limits must be on a standard form and must be signed by the insured. La. R.S. 22:1295(1)(a)(ii). The Cherokee policy does not contain any language addressing UM coverage and there is no rejection or alteration signed by Bean Transport.
Bean Transport’s analysis of the right of an employer to recover from a third-party UM insurer is correct. Travelers Ins. Co. v. Joseph, supra. In that case, the supreme court held that the employer’s UM carrier was a “third person” legally liable to pay employee damages resulting from a work-related automobile accident and that the employer could recover from its UM carrier for reimbursement of benefits paid to the injured employee. At first blush, Bean Transport’s argument appears to have merit, but the distinguishing fact in the instant case is that the employer, Bean Transport, has a contract in the form of the automobile liability policy with its UM carrier, Cherokee, which specifically excludes recovery for workers’ compensation obligations. The court in Travelers, supra, went on to Invalidate workers’ compensation exclusions in UM policies; a UM insurer may exclude reimbursement of workers’ compensation obligations. Travelers Ins. Co. v. Joseph, supra.
The trial court concluded that UM coverage is required in Louisiana and that the statute mandates that it should be included in all current automobile liability policies and, if not included, added by statute. The trial court further determined that the UM statute is to be incorporated into any liability policy covering an accident that occurs in this state along with any exclusions negotiated by the parties. Despite the fact that the trial court applied UM coverage by statute to the policy, Cherokee and Bean Transport agreed that the policy would not cover any workers’ compensation obligations incurred by Bean Transport when they negotiated the terms of the policy. Based on this exclusion, the trial court concluded there was no coverage for workers’ compensation under the policy. For these reasons, we agree that Bean Transport has no recovery or subro-gation rights against Cherokee.
Although Bean Transport is afforded UM coverage under its automobile liability policy with Cherokee as provided by Louisiana law, it is subject to the exclusion contained in that policy regarding payment of workers’ compensation benefits. For this reason, Bean Transport is precluded from recovering under the UM provision of that policy for any workers’ compensation benefits it may have paid. The trial court’s analysis of the UM statute and its inclusion in an automobile liability policy is correct. Accordingly, this assignment is without merit.
17Assignment of Error #3 (verbatim): The trial court committed error when it interpreted the exclusion within the automobile liability policy as precluding recovery by the employer.
Bean Transport asserts that, even if the exclusion applies to the UM coverage, the *16 wording of the exclusion does not preclude its recovery from Cherokee. The exclusion at issue states that the automobile liability insurance does not apply to “any obligation for which the insured ... may be held liable under any workers’ compensation — ].” Bean Transport goes on to argue that the wording of the exclusion simply means that the employer cannot rely on the liability policy to cover any obligations that it may have related to workers’ compensation, but it does not address its ability to recover indirectly under the policy, leaving Bean Transport the opportunity to recover from Cherokee as a third-party UM provider.
A reading of the exclusion makes it clear that the Cherokee policy does not cover any workers’ compensation obligations incurred by the insured. As discussed above, we agree with the trial court’s decision to apply the exclusion in the liability policy to the statutory UM policy. Bean Transport’s petition to intervene requests reimbursement from Cherokee for the workers’ compensation obligation it owed to Claude. Since the contractual relationship between Cherokee and Bean Transport expressly excludes recovery for workers’ compensation obligations, the trial court’s analysis was correct and this assignment is without merit.
Assignment of Error # ⅛ (verbatim): The trial court committed error when it found that the Louisiana Supreme Court decision of Cutsinger v. Redfern applied to the intervention filed by C. Bean Transport.
|sThe principal issue in Cutsinger v. Redfern, 08-2607 (La.5/22/09), 12 So.3d 945, is the solidary relationship between a UM carrier and the employer. The instant matter is distinguishable in that the Plaintiff in Cutsinger filed suit to recover from her own UM carrier, whereas, in the instant case, Plaintiffs filed suit to recover from the employer’s liability/UM carrier. As discussed above, the contractual relationship between Bean Transport and Cherokee changes Bean Transport’s right to recover from Cherokee. The trial court applied Cutsinger correctly in determining that Bean Transport and Cherokee have a solidary obligation to Plaintiffs, but went one step further and applied the workers’ compensation exclusion to the statutory UM coverage, which relieved Cherokee from any obligation it would have had to Bean Transport.
Bean Transport argues that the imposition of a solidary obligation between Cherokee and itself, as outlined in Cutsinger, creates a third-party relationship, allowing it to recover from Cherokee as it would be able to from another UM carrier or third party. In Cutsinger v. Redfern, supra, the supreme court found, by expanding its ruling in Bellard v. American Central Ins. Co., 07-1385 (La.4/18/08), 980 So.2d 654, that a UM carrier and the employer, or its workers’ compensation insurer, are soli-dary obligors, which would have an effect on what Cherokee may owe to Plaintiffs. Any payments made to the injured party by either the insurer or the employer extinguishes the obligation of the other. Cutsinger v. Redfern, supra. That issue is not before this court.
|3In Travelers Ins. Co. v. Joseph, supra, the supreme court concluded that, absent an express exclusion in the UM policy issued to the employer, the UM carrier was a “third person” under the definition of La. R.S. 23:1101(C). Also, as discussed above, in Travelers Ins. Co. v. Joseph, supra, the supreme court found that a workers’ compensation exclusion contained in a UM policy was valid, as parties are free to contract on all matters not forbidden by law. See also Tommie’s Novelty v. Velasco, 37,924 (La.App.2d Cir.2/26/04), 868 So.2d 962.
*17 An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Louisiana Ins. Guaranty Assn. v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 680 So.2d 759. The automobile liability policy is a contract between Bean Transport and Cherokee, which contains an exclusion of coverage for any and all workers’ compensation claims. Bean Transport has been paying its premium to Cherokee with full knowledge and expectation of this exclusion. The contractual relationship between Bean Transport and Cherokee precludes recovery for workers’ compensation obligations. As discussed above, this exclusion applies to all portions of the Cherokee liability policy, including the statutory UM coverage which is incorporated into the liability policy under Louisiana law.
For these reasons, the contractual exclusion agreed upon by Bean Transport and Cherokee eliminates the possibility of recovery for any workers’ compensation benefits under the statutory UM policy. Therefore, Bean Transport has no right of reimbursement or subrogation in this case. | mWe agree with the trial court that dismissal of Bean Transport’s intervention was proper and this assignment of error is without merit.

CONCLUSION

For the foregoing reasons, the ruling dismissing the petition to intervene of In-tervenor, C. Bean Transport, Inc. Creditors Trust, is affirmed. Costs of this appeal are assessed to C. Bean Transport, Inc. Creditors Trust.
AFFIRMED.
BROWN, Chief Judge, dissents with written reasons.

. Subsequent to the district court’s dismissal of its petition to intervene, Bean Transport filed for protection in bankruptcy court. C. Bean Transport, Inc. Creditors Trust was substituted as intervenor.